UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| HARRIS LOCAL GOVERNMENT SOLUTIONS, INC. and N. HARRIS COMPUTER CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>TRUE PRODIGY TECH SOLUTIONS, LLC; OSVALDO MORALES, JR.; and JONATHAN COCO,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 4:22-cv-00752-SDJ<br><br>Jury Trial Demanded |

**DEFENDANTS' REPLY ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER RULE 12(b)(6)**

Jeffrey A. Andrews
Grant B. Martinez
J. Reid Simpson
Charles F. Matula
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002

Plaintiffs' Response shows dismissal is warranted. The Second Amended Complaint fails to allege probative similarity or substantial similarity needed for copyright infringement. Likewise, it fails to point to any plausible allegations that Defendants improperly acquired or used the alleged trade secrets. The Texas common law claims fare no better: they are inadequately pleaded and twice preempted. With three chances to plead plausible claims, Plaintiffs have shown they cannot do so. The Court should dismiss all claims with prejudice.

I. **Plaintiffs' Tortious Interference Claim Fails Because It Lacks Any Allegation of Breach-of-Contract.**

First, the low-hanging fruit: the tortious interference with existing contract claim fails because Plaintiffs have not alleged that Defendants caused anyone to breach a contract. *See* Mot. 20-21; 2d Am. Compl. (ECF No. 29) ¶¶ 85-94. That is fatal to a tortious interference claim.

Plaintiffs' argument to support the claim is wholly without merit. It depends on a 2011 case concluding that an "actual breach of contract is not a required element of a tortious interference with contract claim." Resp. 19 (quoting *Bayco Prods., Inc. v. Lynch*, 2011 WL 1602571, at *7 (N.D. Tex. 2011). Regardless of the merits of that conclusion in 2011, in 2021 the Fifth Circuit explained that Texas law has since been clarified to require an actual breach:

> Our review of Texas law indicates that to prevail on an interference claim, the plaintiff must "present evidence that some obligatory provision of a contract was breached." Intermediate appellate courts in Texas have, on occasion, suggested an actual breach is not required. . . .
>
> [T]he Supreme Court of Texas appears to have clarified the law in this area. In *El Paso Healthcare System, Ltd. v. Murphy*, the Supreme Court of Texas stated the following: "To prevail on a claim for tortious interference with an existing contract, the plaintiff must present evidence that the defendant induced the plaintiff's co-contracting party to 'breach the contract,' and thus interfered with the plaintiff's 'legal rights under the . . . contract.'" This unequivocal language leaves little doubt that a breach must result from the defendant's conduct in order for the plaintiff to prevail. To *induce* commonly connotes not merely *attempts* at interference, but *actual* interference. Accordingly, without sufficient proof that the defendant's conduct resulted in "some obligatory provision of a contract having been breached," the plaintiff's tortious interference claim is infirm as a matter of law.

*WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 354 (5th Cir. 2021) (applying *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 422 (Tex. 2017)) (cleaned up).

The Response does not address this 2021 binding authority from the Fifth Circuit, nor does the Response address the numerous cases applying *WickFire* and *Murphy* to "require[] a plaintiff to allege (at the pleading stage) that defendant's conduct caused a breach of an obligatory provision of a contract."[1] It also fails to address this Court's applying the requirement of an actual breach. *Copeland v. Alamo Billing Co.*, 2021 WL 2792354, at *6 (E.D. Tex. 2021), *adopted*, 2021 WL 3578204 (E.D. Tex. 2021) (Jordan, J.). This frivolous claim should be dismissed with prejudice.

## II. Plaintiffs' Copyright Infringement Claim Fails to Allege Copying.

At its core, the copyright claim fails to adequately allege copying of the only copyrighted material: the source code. This is fatal.

The parties' briefing has narrowed the issues. There is no dispute over:

- Pleading Requirements: At the dismissal stage, a plaintiff "is not required to prove each element of its copyright claim in its Complaint," but needs to "provide enough factual allegations to draw the reasonable inference that the elements exist." Resp. 13 (citation omitted); Mot. 5-6 (explaining courts in the Fifth Circuit apply the normal *Iqbal* standard).

- Elements of Copyright Claim: Copyright claims have three elements: "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity," or "actionable copying." Resp. 13 (citation omitted); Mot. 5.

- Plaintiffs' Own a Copyright on Source Code Only: "Defendants do not dispute that Plaintiffs' alleged ownership of a valid copyright, and challenge the copyright claim only on the second and third elements." Resp. 13. That said, the "only copyrighted work identified is Plaintiffs' source code." Mot. 6 (citing 2d Am. Compl. ¶¶ 72-74.). Plaintiffs do not dispute this point, nor could they.

- Showing Factual Copying: Factual copying means that a defendant "actually used the copyrighted material to create his own work." Mot. 6 (quoting *Batiste v. Lewis*, 976 F.3d

---

[1] *ReSea Project ApS v. Restoring Integrity to the Oceans, Inc.*, 2022 WL 565605, at *2 (W.D. Tex. 2022); *Geolink Ltd. (U.K.) v. Mahmood*, 2022 WL 2124519, at *3 (S.D. Tex. 2022), *adopted*, 2022 WL 2118984 (S.D. Tex. 2022); *see also Randstad Gen. Partner (US), LLC v. Beacon Hill Staffing Grp., LLC*, 2021 WL 8442885, at *6 & n.9 (N.D. Tex. 2021); *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 2021 WL 9145415, at *2 (N.D. Tex. 2021).

493, 502 (5th Cir. 2020)). Plaintiffs do not dispute this. They agree that factual copying can be shown directly or circumstantially. Resp. 13; Mot. 6-7.

- <u>Factual Copying Not Shown Directly:</u> Plaintiffs did not adequately allege factual copying *directly* because all such allegations were naked assertions devoid of factual enhancement. Mot. 6-7. Plaintiffs have no response on this point. Instead, they rely solely on alleging factual copying *circumstantially*. Resp. 13-16.

- <u>Elements of Circumstantial Showing:</u> Factual copying can be established circumstantially by "demonstrating both (1) that the defendant had access to the copyrighted work and (2) that the two works are 'probatively' similar." Resp. 14 (citation omitted); Mot. 6.

- <u>Showing Probative Similarity:</u> "Under the probative similarity standard, a plaintiff need only show that the works contain similarities that are probative of copying . . . . In evaluating probative similarity, a court should compare the works in their entirety, including both protectible and unprotectible elements. A plaintiff can show probative similarity by pointing to any similarities between the two works, even as to unprotectable elements, that, in the normal course of events, would not be expected to arise independently." Resp. 15 (cleaned up); Mot. 9.

All that remains of the dispute concerning the copyright infringement claims is whether Plaintiffs have adequately alleged (1) probative similarity of the source code and (2) substantial similarity. They have not, and the Response fails to show otherwise.

### A. Copyright Infringement Requires Similarities Between the Infringing Work and the Copyrighted Work.

The Fifth Circuit and this Court have specified the relevant comparison for probative similarity: whether "there is 'probative similarity' between *the copyrighted work* and the allegedly infringing work." *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003) (emphasis added); *Goode Time Prods., L.L.C. v. Just*, 2020 WL 5518098, at *5 (E.D. Tex. 2020) (Jordan, J.) (requiring plaintiff to show "that the infringing work is probatively similar to *the copyrighted work*." (emphasis added)). "Probative similarity requires . . . the fact that the infringing work copies something from the copyrighted work." *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 370 (5th Cir. 2004) (quoting *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997)).

Here, the *only* copyrighted work is Plaintiffs' source code. 2d Am. Compl. ¶¶ 72-74. As the Motion showed, Plaintiffs have no allegations of *any* similarities between Defendants' work and Plaintiffs' source code. Mot. 9-10. None. The Response does not point to any such allegations or similarities, either. Resp. 15. For that reason alone, the Court can conclude that Plaintiffs have failed to allege probative similarity.

The Response relies on the wrong comparison. Rather than arguing there are similarities between Defendants' allegedly infringing work and Plaintiffs' source code, it relies on similarities between the parties' software packages' "other non-source code aspects." Resp. 15. These "non-source code aspects" are expressly outside the source code and are therefore not part of the copyrighted work. Plaintiffs' comparison fails because it ignores the copyrighted work.

Plaintiffs argue that the "'unprotectible elements' of PACS can satisfy the probative similarity standard." Resp. 15 (quoting *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 635 (S.D. Tex. 2007)). They go on to identify what they believe to be the "unprotectible elements": "similar outputs, such as the . . . Field Review Card . . . [and] other non-source code aspects." *Id.* But these "non-source code aspects" provide no basis for comparison because they are outside the copyrighted work. While "a court should compare *the works* in their entirety, including both protectible and unprotectible elements," the phrase "the works" references "the infringing work" and "the copyrighted work." *Straus*, 484 F. Supp. 2d at 635 (emphasis added); *Bridgmon*, 325 F.3d at 576. Thus, all elements—protectable and unprotectable—*of the source code* are fair game for the probative similarity comparison.[2] But the "non-source code aspects" of Plaintiffs' software are not "unprotectible elements" of the copyrighted work: they are not part of the copyrighted work at

---

[2] To be clear, a copyrighted work of source code consists of both copyrightable and non-copyrightable (i.e., unprotectable) elements. *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 143 (5th Cir. 2004); *SAS Inst. Inc. v. World Programming Ltd.*, 496 F. Supp. 3d. 1019, 1022 (E.D. Tex. 2020). That distinction is relevant on the actionable copying (also called substantial similarity) element, but not on probative similarity.

all. Plaintiffs have no allegations of probative similarity whatsoever.

### B.     Similarity in Outputs Does Not Show Probative Similarity of Source Code

Plaintiffs do not rely on probative similarity between copyrighted work and infringing work—the two source codes—but rather similarities between *outputs* from those codes. Resp. 15 ("The code generates similar outputs"); Mot. 9-10. They never allege how or why similarities between *outputs* would show *probative* similarities between the source codes that, "in the normal course of events, would not be expected to arise independently." *Batiste*, 976 F.3d at 502.

Nor should the Court draw that inference. The Fifth Circuit has repeatedly recognized that software outputs might be similar because they are dictated by industry standards.[3] Here, the Court can take judicial notice that state law and the state government dictate the format of appraisal records.[4] Courts have also observed that different software code can generate the same outputs.[5]

Plaintiffs speculate that their source code and Defendants' source code have similarities probative of copying, but do not allege anything beyond the mere possibility. That does not suffice.

---

[3]  *See Plains Cotton Co-op. Ass'n of Lubbock v. Goodpasture Comput. Serv., Inc.*, 807 F.2d 1256, 1262 (5th Cir. 1987) (noting "evidence that many of the similarities between the GEMS and Telcot programs are dictated by the externalities of the cotton market" and endorsing the "inference that market factors play a significant role in determining the sequence and organization of cotton marketing software."); *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1346-47 & nn.12-13 (5th Cir. 1994), *opinion supplemented on denial of reh'g*, 46 F.3d 408 (5th Cir. 1995) ("remarkable similarities in some of these [output] formats may be due to . . . compliance with industry standards").

[4]  34 Tex. Admin. Code § 9.3059(a) ("The appraisal roll shall be submitted to the comptroller . . . in the form and manner provided in the Electronic Appraisal Roll Submission Record Layout and Instructions Manual published by the comptroller."). The state Comptroller publishes a 92-page report dictating the format of information submitted by appraisal districts. Texas Comptroller of Public Accounts, *Texas Electronic Appraisal Roll Submission: Record Layout and Instructions Manual* (2022), *available* https://comptroller.texas.gov/taxes/property-tax/docs/96-1051.pdf.

[5]  *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1244 n.45, 1245 (3d Cir. 1986) (screen outputs have "limited probative value" when examining source code similarity); *Atari Games Corp. v. Oman*, 888 F.2d 878, 886 (D.C. Cir. 1989) ("[M]any different computer programs can produce the same 'results,' whether those results are an analysis of financial records or a sequence of images and sounds.") (quoting *Stern Elecs., Inc. v. Kaufman*, 669 F.2d 852, 855 (2d Cir. 1982)).

### C.     Fifth Circuit Does Not Excuse Pleading Probative or Substantial Similarity.

As the Motion predicted, rather than analyze the Second Amended Complaint's allegations of probative similarity to the source code, the Response seeks refuge in a lower bar it reads into three unpublished California district court cases. Mot. 10; Resp. 16 & n.4. None of these Ninth Circuit cases have ever been followed by a district court in the Fifth Circuit, because excusing pleading probative similarity is directly contrary to Fifth Circuit law. *See* Mot. 10.

As pointed out in the Motion, Plaintiffs' failure to allege probative similarity means they have failed to allege the essential element of substantial similarity. Mot. 11. Plaintiffs do not disagree, nor do they provide a reason for the Court to ignore the helpful analysis *MDI v. Lowder*, 2009 WL 10669793 (W.D. Tex. 2009) discussed in the Motion. Mot. 12. Plaintiffs merely ask this Court to excuse the failure because it is "difficult" to perform the required analysis. Resp. 18. Plaintiffs' complaining of such difficulty rings hollow when they rejected Defendants' proposal for early inspection of the parties' source code. ECF No. 19 at 6.

Plaintiffs also incorrectly assert that "the Fifth Circuit has held that 'substantial similarity *may* be considered at the motion to dismiss stage,' but 'should typically be left to the factfinder[.]'" Resp. 16 (citing *Express Lien, Inc. v. Handle, Inc.*, 2020 WL 1030847, at *11 (E.D. La. 2020)). In fact, the case cited, *Express Lien*, applied the normal *Iqbal* standard. 2020 WL 1030847, at *11 (holding that an exhibit attached to the complaint "provide[d] sufficient facts to raise plaintiff's right to relief above a speculative level on the issue of substantial similarity. The exhibit presents over fifty pages of side-by-side comparisons reflecting similarities . . . .").

Indeed, the Fifth Circuit has not endorsed a lower bar at the pleadings stage by excusing the failure to plead similarity. Rather, it has applied the normal standards from *Twombly* and *Iqbal*. *See* Mot. 5. Plaintiffs agree this requires "provid[ing] enough factual allegations to draw the reasonable inference that the elements exist," Resp. 13 (citation omitted); therefore, they must

- 6 -

allege enough facts to show (1) the infringing source code and the copyrighted source code contain similarities that are probative of copying and (2) substantial similarity. They have failed.

### III.     Plaintiffs Fail to Allege Misappropriation of Trade Secrets

#### A.     Plaintiffs Do Not Adequately Allege the Existence of Trade Secrets

Plaintiffs argue they have adequately identified and defined trade secrets. Resp. 8-9. But the issue is whether they adequately allege the elements of a trade secret. Mot. 14-15.

First, the Response does not address "reasonable measures . . . to keep the information secret" *at all*. Resp. 8-10; Tex. Civ. Prac. & Rem. Code § 134A.002(6) (defining trade secret). Nowhere does it identify well-pleaded allegations of reasonable secrecy measures. *Id.* That is because the Second Amended Complaint only contains a vague, nonsensical, and conclusory allegation of such measures. Mot. 15. The Response gives the Court no reason to conclude otherwise. The Court can dismiss the trade secret claim on that basis alone. Tex. Civ. Prac. & Rem. Code § 134A.002(6); *RRK Foods Inc. v. Sree Nidhi Corp.*, 2022 WL 3636676, at *10 (N.D. Tex. 2022) (dismissing for failure "to allege that it took reasonable measures to keep information secret"); *Richter v. Carnival Corp.*, 2019 WL 5894213, at *7 (N.D. Tex. 2019) (dismissing trade secret claim for failure to allege "that she maintained the secrecy of her alleged trade secret").

Second, the Response does not show that the alleged trade secrets (other than the source code) satisfy the independent economic value requirement. The source code at least has a conclusory allegation. 2d Am. Compl. ¶ 59. For everything else, the Response simply does not address the standard—it argues that Plaintiffs paid money for business information and that the alleged trade secrets "are *all* valuable." Resp. 9-10. But that is not *independent* economic value *from being secret* and *not being readily ascertainable through proper means*. Tex. Civ. Prac. & Rem. Code § 134A.002(6).

In an extensive discussion of this requirement, this Court showed that "business

information is not necessarily a trade secret" and that "value" alone does not qualify as "independent economic value" from being secret. *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 609-11 (E.D. Tex. 2021) (Jordan, J.), *aff'd sub nom. Providence Title Co. v. Fleming*, 2023 WL 316138 (5th Cir. 2023). "[J]ust because a business benefits from keeping certain information confidential does not necessarily mean that the information has independent economic value derived from its confidentiality. Otherwise, all confidential business information would constitute a trade secret . . . ." *Id.* at 610-11. "[C]ommentators have criticized courts for not giving enough scrutiny to whether an alleged trade secret actually has independent economic value." *Id.* at 611 n.8. This Court should enforce the requirement.

The Response's hand-waiving does not explain how the Second Amended Complaint's allegations plausibly satisfy all requirements for independent economic value from being secret.

### B. Acquisition and Use of Trade Secrets

The Response fails to show that the complaint alleges that Defendants acquired any alleged trade secrets improperly. *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (plaintiff must show "the trade secret was acquired through a breach of a confidential relationship or discovered by improper means"). To the extent that Morales or Coco acquired trade secrets during their prior employment, such acquisition was not through "breach of a confidential relationship" or discovery by "improper means." The complaint contains no such allegations, and the Response does not contend otherwise. Nor could True Prodigy have obtained Plaintiffs' trade secrets from Denton CAD, as the Response argues, Resp. 2, 11, and no discovery is needed to show otherwise. Plaintiffs themselves have alleged that none of their customers have access to Plaintiffs' source code or any other trade secrets. 2d Am. Compl. ¶ 22. Access to the end product is not access to the underlying trade secrets: a Pepsi employee does not acquire Coke's trade secrets when she compares the tastes of the two drinks, nor a Google employee when she sees Bing results.

Plaintiffs mistakenly rely on the allegation that "Defendants could not have developed a new competing product from scratch, on their own, within the short time that they were able to get to market." 2d Am. Compl. ¶ 49; Resp. 5, 10, 13. First, the Fifth Circuit has specifically rejected this kind of inference. *CAE*, 44 F.4th at 263. ("CAE contends that Moov could never have succeeded without CAE's data, claiming that 'the "use" of this data can reasonably be inferred from Moov's results.' This inference is insufficient to support a finding that Moov used CAE's trade secrets."). Second, the Court should not credit this conclusory allegation. Plaintiffs nowhere allege the time it took to get to market, only that Morales left in 2012 and started marketing another product in 2018. 2d Am. Compl. ¶¶ 10, 26. The Court should dismiss the trade secret claim for failure to allege improper acquisition of the trade secret or use of any trade secret.

### IV. The Copyright Act and TUTSA Preempt Plaintiffs' Unfair Competition and Tortious Interference Claims.

#### A. The Copyright Act Preempts the Common Law Claims.

The Response half-heartedly advances two arguments regarding copyright preemption. The first is irrelevant: it asserts that courts have "uniformly held that *trade-secret-misappropriation claims*—under either the TUTSA or common law—are not preempted by the Copyright Act." Resp. 20 (citation omitted) (emphasis added). But Defendants have not argued that the trade secret misappropriation claim is preempted; rather, the unfair competition and tortious interference claims are preempted.

The Response next argues that the common law claims are "based on confidential and proprietary information that is not otherwise protected by the Copyright Act." Resp. 20. First, "[t]his argument carries no purchase because it conflates copyright *protection* with copyright *preemption*." *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 774 (5th Cir. 2017) (emphasis in original). The "Copyright Act preempts more than it protects." *Id.* at 773. Thus,

Plaintiffs needed to explain why this other information is not "within the subject matter of copyright." *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 378 (5th Cit. 2020). They cannot. Indeed, all the identified software, schemas, contracts, and cards are "within the subject matter of copyright" because they are original works of authorship fixed in a tangible medium of expression. *Motion Med.*, 875 F.3d at 773-74; *see* 17 U.S.C. § 102.

Second, Plaintiffs' argument fails to the extent that it relies on some other, unspecified "confidential and proprietary information that is not otherwise protected by the Copyright Act." If relying on naked assertions about unidentified types of information, Plaintiffs claims fail to include the factual information required by Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### B. TUTSA Preempts the Common Law Claims.

Although courts have debated the scope of TUTSA preemption, *this Court*, after considering the issue at length, embraced the majority position. *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 333-39 (E.D. Tex. 2019). Plaintiffs do not address *StoneCoat* at all or provide a reason to depart from the majority rule. Resp. 20-21. They cannot. Other courts have recently cited *StoneCoat* in reaffirming the majority rule. *See, e.g.*, *CAE Integrated, LLC v. Moov Techs. Inc.*, 2022 WL 4476784, at *3-4 (W.D. Tex. 2022). This Court should adhere to its prior holding, which was correctly decided.

Plaintiffs' invocation of alternative pleading does not save them. Courts "have consistently found that 'allow[ing] multiple theories of relief for [the] same underlying harm' cannot proceed past a motion to dismiss." *Stress Eng'g Servs., Inc. v. Olson*, 2022 WL 4086574, at *6 (S.D. Tex. 2022), *adopted*, 2022 WL 4084433 (S.D. Tex. 2022). The claim is preempted whether or not Plaintiffs allege a TUTSA claim. That is the nature of preemption.

### CONCLUSION

The Court should dismiss the Second Amended Complaint with prejudice.

Dated:  March 6, 2023

Respectfully submitted,

_____
Jeffrey A. Andrews
ATTORNEY-IN-CHARGE
State Bar No. 24050227
Grant B. Martinez
State Bar No. 24104118
J. Reid Simpson
State Bar No. 24072343
Charles F. Matula
State Bar No. 24121583
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Telephone: (713) 632-8000
Facsimile: (713) 632-8002
jandrews@yettercoleman.com
gmartinez@yettercoleman.com
jrsimpson@yettercoleman.com
cmatula@yettercoleman.com

ATTORNEYS FOR DEFENDANTS

## Certificate of Service

I certify that on March 6, 2023, a copy of this document was served on all counsel of record using the Court's e-filing system.

*/s/ Jeffrey A. Andrews*
Jeffrey A. Andrews